Good morning and welcome to the Ninth Circuit sitting in Phoenix. My name is Bridget Beatty. I have my chambers here in Phoenix, along with Senior Circuit Judge Michael Hawkins, who also has his chambers here in Phoenix. And we're very pleased to be joined today by Senior Circuit Judge Jay Bybee, who has his chambers in Las Vegas, Nevada. We have submitted all but one of the cases on the calendar today, so we have argument in Lopez v. Williams. So, counsel, whenever you're ready. Good morning, and may it please the Court. My name is Shelley Richter, and I represent Petitioner Appellant Mario Lopez. I appreciate the opportunity to address the uncertified argument today, which is essentially about the District Attorney's practice of secretly providing benefits to witnesses in criminal cases. The District Court here erred in dismissing two claims related to this issue for purely procedural reasons. And to demonstrate that, I'd like to talk about three things. First, what the motion for a new trial hearing showed. Second, how Lucas Gaffney was deficient in not filing a notice of appeal. And third, how Mr. Gaffney's conflict of interest on post-conviction constitutes good cause. So I'll turn to that first issue, what the motion for a new trial hearing showed. While Mr. Lopez's case was pending on direct appeal, the Las Vegas Review-Journal exposed a practice of the Clark County District Attorney of providing benefits to witnesses in criminal cases. And that happened here. On October 29th, Maria Robles, who was Mr. Lopez's separated wife, testified in his case. And afterward, in the hallway, there was a discussion between her and the prosecutor about paying for her cell phone bill. And the next day, she testified again on cross and on redirect. Her children testified. And then she testified once more during the state's next ‑‑ I'm sorry, I don't know how to refer to this. But she testified again after Mr. Lopez had testified. And so the defense was never informed about this benefit that she would receive. And so there was never any potential for the defense to impeach her or to challenge her credibility based on her receiving this from the prosecutor. There was never a chance for the defense to question the credibility of her children who testified. And there was never a chance for the defense to impugn the integrity of the investigation as a whole because of these improper tactics. And ultimately, this practice hampered the defense, and it kept the jury in the dark. And once the motion for a new trial hearing was heard and decided and lost, it was Lucas Gaffney's role as counsel. Okay. The counsel. Gaffney represented Mr. Lopez at the post‑trial hearing, the Brady hearing. He did. Okay. And are you alleging that he was ineffective in his conduct at that hearing? No, Your Honor. We're alleging he was ineffective for not filing the notice of appeal once that hearing was lost. A notice of appeal on what? Where's the ineffective assistance of trial counsel? The ineffective assistance is in not filing a notice of appeal when Mr. Lopez would have otherwise wanted to appeal. Under Roe v. Flores‑Ortega, we apply the Strickland standard to a counsel's performance in filing or not filing a notice of appeal. And here, a rational defendant in Mr. Lopez's position would have wanted to appeal because the motion was nonfrivolous. And in addition, Mr. Lopez himself was litigious. He testified in his own defense. He went to trial, of course. He pursued a direct appeal. While that was pending, he pursued the motion for a new trial and a post‑conviction petition. And so all signs point to Mr. Lopez would have wanted to appeal, but there is nothing in the record that shows Lucas Gaffney ever consulted with him about that. And that's deficient performance under Roe v. Flores‑Ortega, a U.S. Supreme Court case that applies Strickland. And I would also note that the state law standard for this issue, had it been appealed, was quite favorable under Mazan. That's a Nevada state court decision. All Mr. Lopez needed to show was a reasonable possibility of a different outcome had this information been disclosed to the defense. That's even lower than Brady. And the deficient performance of Mr. Gaffney in not filing a notice of appeal did cause prejudice. Under Flores‑Ortega, the prejudice question is whether but for the defense attorney's failure to consult would there have been an appeal. So it's not a question of would he have prevailed on appeal, it's a question of was the appeal itself forfeited. And here it was. Obviously, Mr. Lopez would have wanted to appeal based on his history and based on the non‑frivolous nature of the claim. So turning to the next point, which is how Mr. Gaffney's conflict of interest provides good cause, is particularly interesting and straightforward. I mean, Mr. Gaffney was the attorney who was deficient in not filing the notice of appeal. Mr. Gaffney was also the attorney on postconviction whose role it was to raise that deficient performance. And so that generated a conflict of interest. Mr. Gaffney wasn't going to allege his own ineffectiveness. And a conflict of interest under both this Court's case law and the U.S. Supreme Court case law does constitute good cause to overcome a default. The U.S. Supreme Court's decision in Maples v. Thomas from 2012 is instructive, as is this Court's decision from 2000 in Manning v. Foster. Both of those cases recognize that where a postconviction attorney has a conflict of interest, where he's not pursuing his client's interest, that will sever the attorney ‑‑ the principal agent relationship or the attorney client relationship, so that his actions are no longer imputed to the client and they can constitute good cause. And so that clear conflict provides good cause to overcome the default of Claim 3B, which is the ineffective assistance of counsel claim. And then Claim 3B itself constitutes good cause to overcome the default of Claim 2, which is the Brady claim. If he's got ‑‑ if Gaffney's got the ‑‑ got a conflict, then why can't you go back to Nevada and raise this in Nevada courts? Thank you, Your Honor. It would be impossible to raise this in Nevada courts because Nevada courts don't recognize the same good cause standard under Williams, which is a 2016 Nevada case cited in the footnote on this issue. It says that they simply don't recognize the conflict of interest of postconviction counsel to be good cause in the same way as the federal courts do. And so this is an instance of ‑‑ Did you make any attempt to get back into Nevada courts? There has not been an attempt to get back ‑‑ Why not? Because the Nevada courts would not consider this to be good cause under their law. They don't consider the ineffective assistance of postconviction counsel to be good cause nor the conflict of interest of postconviction counsel to be good cause. And the case on the conflict of interest would be what? Williams, 2016 decision. That's the Supreme Court's decision? Nevada Supreme Court's decision.  Nevada Supreme Court's decision. And also under Brown v. McDaniel and COCA, which just came out, those both affirmed that the ineffective assistance of postconviction counsel is not good cause in Nevada state court. So for you to demonstrate a cause to overcome the bar, you need to fit within the Martinez exception. Is that correct? No, Your Honor. There are two ways we could fit within the bar. One way is Martinez and the other way is through the conflict of interest. Okay. So going back to the Martinez issue, that turns on the role that the attorney was playing, and it's intended to overcome the bar to allow a claim of ineffective assistance of trial counsel as opposed to appellate counsel, and Davis v. Davila talks about that. So what I'm struggling with is that it seems Mr. Gaffney's role in not filing a notice of appeal was that of an appellate counsel, and that would not fit within Martinez. So how do you respond to that? How do we get around that? First, I would disagree that he was acting as appellate counsel, but even if he were, the conflict of interest argument would still overcome the good cause issue. Under this court's decision in Mormon v. Schrierow, that's the 2005 case, a conflict of interest that the post-conviction counsel has because he's also acting as appellate counsel would constitute good cause. So you have a little over a minute. Did you want to reserve any time? Yes. Thank you, Your Honor. I'd like to ask one more question. Of course. Go ahead. I'm still just a little bit confused by your argument. Because you told me that under the Williams case that Nevada wouldn't recognize the ineffective assistance of PCR counsel. But I thought you told me that your argument for us in getting through Martinez was that he was trial counsel. So is he trial counsel or is he PCR counsel? It feels like you've played both sides of the road here. The issue is he was playing both sides. Lucas Gaffney was. No, it feels like your argument has played both sides. When it's convenient, he's PCR counsel. When it's convenient to get around state rules, he's PCR counsel. When you need to get around federal rules, then he's trial counsel. Lucas Gaffney served as PCR counsel and he served as counsel on the motion for new trial hearing. And his ineffectiveness as PCR counsel or his conflict as PCR counsel in state court wouldn't be good cause. But in federal court — But what about his ineffective assistance as trial counsel? Well, that would be — that has never been raised to the Nevada Supreme Court because — I know it hasn't. Don't you have an obligation to try to exhaust that? You're going to come and tell us that you think that he was acting as trial counsel and therefore you can get through the Martinez gateway. But you haven't — you're not willing to make that argument before the Nevada courts because that looks like that would get you around Williams. We couldn't raise this in Nevada state court because Lucas Gaffney never filed the notice of appeal. So that was never raised to them. And there would be no way to get over the bar now because it's too late. It would be a successive petition. It would be an untimely petition in state court. And I see my time is up. And thank you very much. I'll give you a couple minutes for rebuttal. Okay. Thank you. I appreciate it. Good morning, Your Honors. May it please the Court. My name is Katrina Lopez and I represent the respondents in this matter. I'm prepared to discuss the uncertified issue. This is a little different considering Buck v. Davis and Ninth Circuit Rule 221F. However, to the extent this Court wants to address this issue, Mr. Lopez is not entitled to relief because this is not an IAC claim. Therefore, Martinez doesn't apply and Davila does. Lopez was never challenging that his trial counsel was ineffective. He was challenging that his appellate counsel was ineffective for not filing a motion for — for not appealing the state court's decision to appeal the denial of his motion for a new trial. Lopez doesn't have a right to counsel in challenging a motion for a new trial in the first place. I noticed that opposing counsel cited Manning v. Foster, but Manning v. Foster is distinguishable from this case because in Manning, you're dealing with a direct appeal counsel who advised his counsel that it would be improper to file a state habeas petition. But that's distinguishable from here. Here, Lopez is saying that his counsel — that his post-conviction counsel was ineffective due to a conflict. However, Nevis, Bonin, and Moran hold that a conflict-impaired counsel's performance during state habeas proceedings is not cause to overcome a procedural default. In addition, the Sixth Amendment right to counsel does not extend to discretionary state court appeals, which is stated in Pennsylvania v. Finley. So your opposing counsel argued that Mr. Gaffney had a conflict of interest that was a separate issue and another reason to overcome the procedural bar apart from Martinez. What is your response to that? My response is that the conflict cannot be cause to overcome the procedural default with Martinez. Correct. But she's suggesting that it's outside of Martinez, that it's another avenue to overcome the bar because of Mr. Gaffney's conflict, and that he was PCR counsel and he wouldn't have challenged his own conduct in not filing the notice of appeal. But, Your Honor, whether or not she believes that it's another way to overcome the bar, whether it doesn't apply to Martinez or it doesn't either way, he is not entitled to relief. Because if you go through the Martinez route, he's still not entitled to challenge appellate's counsel. The only constitutional right to counsel is the counseling of appeal of right. This is a collateral issue. So whether you look at it from the Martinez or a conflict standard, either way, they cannot overcome that procedural bar. And, Your Honors, I'm also prepared to address the certified issues as well. So according to Darden, prosecutorial – Your opponent didn't argue them, the certified issues. Yes, Your Honor. So go ahead if you'd like. Yes, Your Honor. According to Darden, prosecutorial misconduct occurs when a prosecutor's improper remarks so infect the trial with unfairness as to make the resulting conviction a denial of due process. However, that did not occur here. The prosecution explained to the jury that they could only consider voluntary intoxication if they believe that the intoxication prevented Lopez from forming specific intent to commit the specific intent crimes of attempted murder, burglary, and assault. Was there a contemporaneous objection to that statement? No, Your Honor. And the jury was instructed on the issues that pertain to the comment? Yes, Your Honor. Did the trial defense counsel object to the trial court's instructions to the jury in that regard? No, Your Honor. The jury was instructed that the prosecution have the burden to prove all the material elements beyond a reasonable doubt. They were also instructed that the defendant is presumed innocent. They were also instructed about the voluntary intoxication defense as well as which crimes fall under specific intent. And also the jury was required to be governed in deliberations by the evidence as they understand it and as how they remember it and by the law that was given to them based on the instructions. Would you agree that the statement that the prosecutor made was in fact a misstatement of the law because the statement was that the person would have to be unable to walk, carried by their friends, not know where they were, what they were doing, slurring their speech, you know, the most impaired person you've ever seen, all these sorts of physical attributes of a very impaired person for that to be involuntary intoxication that could be a defense to specific intent? That seems to be incorrect and overstatement of the law. Your Honor, it's not an overstatement of the law because the prosecution merely provided everyday examples to show an example between individuals who make bad decisions while they're intoxicated in comparison to an individual that is so intoxicated they cannot form the specific intent. And so the prosecution was showing to the jury that they met that burden of specific intent in relation to the attempted murder, the assault, and the burglary and was merely asking the jury to look at Mr. Lopez's events on the morning of the crimes in question, such events as Mr. Lopez lying in wait, waiting for the victim, the fact that he was locked out of the house but still broke in, the fact that he stabbed his wife 12 times, and it wasn't just his wife's testimony, but their daughter ML testified to that fact. And then after stabbing the wife 12 times, he walks towards his daughter with a knife in his hand. She testified to that, but then their son AL came out of the room and then he proceeded over and stabbed his son three times. And their son MLJ, as well as Robles, testified to Lopez stabbing them. And then the threats that he made before the stabbings, the fact that he blamed his daughter, his son, and his wife for what was going on with their marital affairs. And then on top of that, threatening the family, trying to get back in the house, saying that they were going to die as the family. The prosecution was merely saying, hey, looking at these events, this is not just someone that was so intoxicated that they couldn't form the specific intent. So your argument is that even if this was a misstatement, it's, and error, if it was, is harmless in light of the overwhelming evidence? It's not even error, Your Honor, because when the Nevada Supreme Court did the analysis... My question said, if it is... Yes, Your Honor. Isn't your argument that it's harmless? Yes, Your Honor. Thank you. I'm a little puzzled by the paragraph where the Nevada Supreme Court deals with this, because I can't tell the, I understand the Court's conclusion, that there's no plain error. But plain error may be a technical term here. The Supreme Court says that plain error review has three elements, that is, that there's error, that the error is plain, and that there's prejudice. So I can't tell whether this is sort of the ultimate conclusion, that there's no plain error in which somebody's failed to prove any one of those, at least one of those elements, or whether it means that there was no error. So I can't, I can't tell whether the Court thinks that the prosecutor's statement was pushing the line and whether it was over the line. So I do see that on page three of the Supreme Court's decision, it says, considering the statements in context, the prosecutor appropriately argued that even if Lopez was intoxicated, he was not so intoxicated. That doesn't really deal with sort of the prosecutor's restatement of the elements of voluntary intoxication. So does the State have a view? Did the Court say that this was in error, or did it just conclude that it was, if there was any error, it was not so obvious and or there was no prejudice? That was a complex question. Well, Your Honor, with respect to ground A, 1A, the Nevada Supreme Court determined that there was no error. And they said... And can you point to me where in the Court's opinion it says there was no error? Yes, Your Honor. It is 1ER0067. Yeah, that's the paragraph that I've got. And so they said the prosecutor appropriately argued. I don't know what that means. I'm not sure whether they're saying there's... They don't actually come out and say, this was not an error. Or they don't come and say, well, it might have been an error, but it's not plain. Or they could have said, it's an error, it's plain, but it's harmless. And all of that could still lead you to conclusion that there was no plain error. Well, Your Honor, on 1ER0067, which you referenced, it says considering the statements in context. Yeah. So looking at the context of the prosecutor's statements, it says that the prosecutor appropriately argued that even if Lopez was intoxicated, he was not so intoxicated that he was unable to form the intent to commit the charged crimes. Yeah. That still doesn't... I still find ambiguity in that statement as to whether the Supreme Court thought that the prosecutor's restatement of the standard was correct or incorrect. Well, Your Honor, it is... The Nevada Supreme Court said that there was no plain error, but if you look at ground, the Nevada Supreme Court's analysis with Grounds 1C and 1D, we see on 1ER0068, it says we conclude that some crossed the line of appropriate advocacy. So when you compare that to Ground 1A, clearly there is no error. And so because the Federal District Court granted COA to Ground 1E with respect to 1A, there is no error to accumulate. And I see that I ran over my time, but on that basis, Your Honor, I ask that this Court affirm the District Court's decision in denying relief to Grounds 1A and Ground 1E and to affirm the Federal District Court's decision in dismissing the uncertified issue. Thank you. Thank you. Thank you, Your Honors. I'll be brief. Regarding Ms. Lopez's argument that there was no right to counsel for the motion for a new trial, that argument is actually foreclosed by this Court's prior decision in Mennefield v. Borg. That's a case from 1989 cited in the briefs. So this Court and other courts have long held that there is a right to counsel at the motion for a new trial stage. And then as Judge Beatty, you pointed out, we do make those two alternative arguments, one under Martinez and one under Maples and conflict of interest. And turning to the certified issue that Ms. Lopez talked about, what the prosecutor said was clearly a misstatement of the law. And the prosecutor made it very definitively and in a way that the jury would have understood it as a definitive statement of the law. The prosecutor said that's what it takes for voluntary intoxication to play a role. But the jury was also told, I assume, as standard in criminal trials, that what the lawyers say is not the law and is not evidence, it's their statement, and that the law comes from the bench, correct? That's true. Is there some sense that the jury was encouraged to ignore that? No, but what the prosecutor did was provide an explanation of the law that was incorrect and that was also not inconsistent. How do we know that it's incorrect? Doesn't the Nevada Supreme Court have the last word on that? Can we decide that the statement was incorrect if the Nevada Supreme Court has said there was no plain error? Yes, because any reasonable jurist reading this transcript, the error just jumps off the page. It didn't jump off to me, but maybe I'm not a reasonable jurist. We know what Nevada law is, which is that intoxication can undermine specific intent. Right, but if the Nevada Supreme Court has reviewed this, I still find some ambiguity in what the Nevada Supreme Court said. Let's suppose the Nevada Supreme Court said, we're reviewing this for plain error, three elements, error, that is plain, and prejudice, and we find that there is no error here. Wouldn't we be bound by that? No, Your Honor. Because this is the Nevada Supreme Court telling us what Nevada law is. But their judgment on it still needs to be reasonable, and they did not purport to expand or define the law of intoxication. What case would tell us that we can decide that Nevada law means something different from what the Nevada Supreme Court says it is? If the Nevada Supreme Court were defining what the law is and stating what intoxication means in a way that accords with the prosecutor... But why, if they said, this is not an incorrect statement of the law, so there's no error here, much less plain error, then how would we possibly be able to review that? That might be different, because that would be more akin to the Nevada Supreme Court defining the law, as opposed to interpreting what the prosecutor said in an over my time. So I thank the Court. Thank you. Thank you both for your arguments this morning. They were very helpful. And this case is submitted, and we are adjourned.
judges: HAWKINS, BYBEE, BADE